**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| STATE OF DELAWARE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | Crim. ID. No. 1104009274 |
| | ) | |
| | ) | |
| WILLIAM HUDSON, | ) | |
| | ) | |
| Defendant. | ) | |

Submitted: January 30, 2025
Decided: April 30, 2025

**COMMISSIONER'S REPORT AND RECOMMENDATION THAT DEFENDANT'S MOTION FOR POSTCONVICTION RELIEF SHOULD BE SUMMARILY DISMISSED**

Annemarie Hayes, Esquire, Deputy Attorney General, Department of Justice, Wilmington, Delaware, Attorney for the State.

William Hudson, James T. Vaughn Correction Center, Smyrna, Delaware, *pro se*.

SALOMONE, Commissioner

This 30th day of April, 2025, upon consideration of Defendant's Second Motion for Postconviction Relief and the record in this case, it appears to the Court as follows:

## BACKGROUND AND PROCEDURAL HISTORY

Defendant William Hudson ("Hudson" or "Defendant") was arrested on April 12, 2011, and charged with multiple offenses relating to allegations of sexual abuse of a minor ("the minor").[1] Hudson was initially indicted on August 1, 2011,[2] and then reindicted on October 24, 2011[3] and charged with the following offenses: (i) one (1) count of Endangering the Welfare of a Child; (ii) one (1) count of Continuous Sexual Abuse of a Child; (iii) two (2) counts of Invasion of Privacy; and (iv) twenty-five (25) counts of First Degree Sexual Abuse of a Child by a Person in a Position of Trust. These charges stemmed from allegations of sexual abuse which occurred from approximately 2008 to 2011.[4]

A jury trial was held over a six-day period from January 31, 2012 to February 7, 2012.[5] At its conclusion, the jury found Hudson guilty of all counts.[6] Prior to

---

[1] Docket Index 1, Adult Complaint and Warrant. For purposes of this Report and Recommendation, all docket item references relate to Superior Court Criminal Docket, *State v. Hudson*, Case No. 1104009274 (hereinafter, "D.I. __"). The phrase "the minor" will be used throughout this Report and Recommendation in lieu of the victim's name.
[2] D.I. 3.
[3] D.I. 12.
[4] D.I. 1, Adult Complaint and Warrant, Ex. B.
[5] D.I. 23.
[6] D.I. 23.

sentencing, Hudson moved to dismiss fifteen (15) of the convictions for First Degree Sexual Abuse of a Child by a Person in a Position of Trust, arguing that the statute, 11 *Del. Code* § 778, was not enacted until June 30, 2010 and, therefore, those charges as set forth in Counts II-XVI of the indictment occurring prior to June 30, 2010 could not stand.[7]  This Court held argument on the motion on October 31, 2012,[8] and the State provided a supplemental response on January 28, 2013.[9]

On January 30, 2013, Hudson was sentenced to a total of 122 years of unsuspended prison time on the charges that were unrelated to the Motion to Dismiss.[10]  The Court deferred sentencing on Counts II-XVI.[11]  Trial counsel was substituted and appellate counsel entered his appearance at Hudson's sentencing.[12] On February 19, 2013, this Court wrote to appellate counsel requesting his position on Counts II-XVI in regard to the Motion to Dismiss.[13]  On March 22, 2013, the State entered *nolle prosequis* on Counts II-XVI of the indictment.[14]

Hudson filed a direct appeal to the Delaware Supreme Court on February 21, 2013.[15]  On March 24, 2014, the Delaware Supreme Court affirmed the judgment of

---

[7] D.I. 27, 54.
[8] D.I. 29, 30.
[9] D.I. 31.
[10] *Id.*
[11] *Id.*
[12] D.I. 54.
[13] D.I. 33.
[14] D.I. 35.
[15] D.I. 34.

2

the Superior Court.[16]  On January 20, 2015, Defendant filed a *pro se* Motion for Postconviction Relief (the "First Motion").[17]  Then, on April 30, 2015, Defendant filed a Motion for Appointment of Counsel, which was granted on June 9, 2015.[18] The State filed their response to Defendant's First Motion on April 28, 2015.[19]

On August 15, 2016, postconviction counsel filed a Motion to Withdraw as Counsel accompanied by an Appendix.[20]  Defendant responded to the Motion to Withdraw and filed a Memorandum of Law in Support of his First Motion on October 13, 2016.[21]  Due to a clerical error, Hudson's trial counsel was not properly notified of the Court's scheduling order.[22]  As a result, trial counsel's affidavit was not filed until February 10, 2017.[23]  The State filed its response to Defendant's Memorandum of Law on April 13, 2017,[24] and Defendant filed his reply on May 3, 2017.[25]  Hudson's First Motion was denied by this Court on September 29, 2017.[26]

On October 2, 2017, a Superior Court Judge issued a scheduling order for submissions by Hudson, appellate counsel, and the State regarding claims made in

---

[16] D.I. 42.
[17] D.I. 44.
[18] D.I. 45, 48. Defendant was assigned Rule 61 counsel on March 24, 2016. D.I. 51.
[19] D.I. 46.
[20] D.I. 54, 55.
[21] D.I. 59, 60.
[22] D.I. 62.
[23] D.I. 63.
[24] D.I. 67.
[25] D.I. 68.
[26] D.I. 69.

Hudson's Memorandum of Law asserting ineffective assistance of appellate counsel.[27] Shortly thereafter, Hudson filed a *pro se* supplemental memorandum to his First Motion elaborating on his claims of ineffective assistance of appellate counsel.[28] On November 20, 2017, appellate counsel filed an affidavit in response to Defendant's ineffective assistance of counsel claims, and the State subsequently responded on January 12, 2018.[29] Defendant filed his reply on February 14, 2018.[30]

On April 25, 2018, a Superior Court Commissioner filed her Report and Recommendation advising that Defendant's First Motion should be denied as it related to his supplemental appellate claims.[31] Defendant filed an appeal on November 1, 2017 after his First Motion was denied, but the Supreme Court dismissed the appeal without prejudice and instructed Defendant that an appeal could be filed once the Superior Court had issued its final order.[32] On May 7, 2018, Defendant appealed the Commissioner's recommendation.[33] On July 10, 2018, the Superior Court adopted the Commissioner's Report and Recommendation that Defendant's First Motion should be denied as to his supplemental appellate claims.[34]

---

[27] D.I. 70. The Superior Court also found Rule 61 counsel's motion to withdraw to be moot. D.I. 71.
[28] D.I. 72.
[29] D.I. 73, 74.
[30] D.I. 79.
[31] D.I. 81.
[32] D.I. 82.
[33] D.I. 83.
[34] D.I. 85.

4

Defendant filed a notice of appeal of that decision to the Delaware Supreme Court on July 25, 2018.[35] On January 22, 2020, the Delaware Supreme Court affirmed the judgment of the Superior Court.[36] On April 21, 2021, Defendant filed a Motion for Discovery/Production of *Brady* Materials, which the Superior Court denied on October 5, 2021.[37] On January 10, 2025, Hudson filed a second Motion for Postconviction Relief (the "Second Motion") as well as a Memorandum of Law in support of that motion.[38] The Second Motion was referred to this Commissioner for a Report and Recommendation on January 30, 2025.[39]

## FACTS

The facts of this case were set forth over the course of a six-day trial and evidence a disturbing pattern of sexual abuse by the Defendant that occurred over several years. On April 11, 2011, the minor reported to the Division of Family Services ("DFS") that she had been inappropriately touched by Defendant for the past two years.[40] Upon learning this information, a New Castle County police officer transported the minor to the department to be formally interviewed.[41] A New Castle County detective met with the minor and learned that about two years prior, when

---

[35] D.I. 102.
[36] D.I. 105.
[37] D.I. 106, 107.
[38] D.I. 108, 109.
[39] D.I. 112.
[40] D.I. 1, Adult Complaint and Warrant, Ex. B.
[41] *Id.*

the minor was 12 years old, Hudson bought her a vibrator.[42] The minor explained that Hudson purchased the vibrator so that she could feel comfortable with her sexuality.[43]

The minor also advised the detective that Hudson showed her how to use the vibrator by holding it and placing it on her vagina.[44] When this occurred, she said that her clothes were off and that the vibrator was touching the skin of her vagina.[45] The minor stated that Hudson had been using the vibrator on her at least once a week for the past two years.[46]

The minor also recalled times when Hudson had showered with her.[47] He asked her to wash his body, including his genitals, and the minor stated that she used a wash cloth to do so.[48] At the time of the interview, the minor indicated the last time she showered with Hudson was several months ago.[49] She informed the detective that Hudson would become upset when she told him that she did not want to engage in assisted masturbation with him.[50] On April 2, 2011, the minor explained

---

[42] *Id.*
[43] *Id.*
[44] *Id.*
[45] *Id.*
[46] *Id.*
[47] *Id.*
[48] *Id.*
[49] *Id.*
[50] D.I. 1, Adult Complaint and Warrant, Ex. B.

that Hudson was so upset with her refusal that he made her get undressed and stand outside naked.[51]

After the minor's interview, the detective contacted Hudson, who agreed to an interview.[52] During the interview, Hudson admitted that he had purchased a vibrator for the minor and showed her how to use it.[53] Hudson said that he only showed the minor how to use the vibrator on one occasion and was just trying to help her by teaching her how to pleasure herself.[54] Hudson explained that he got no sexual gratification from it.[55] When confronted with the inconsistencies in his statements compared to those of the victim, Hudson simply stated he was telling the truth.[56] In a later interview, Hudson revealed that he had taken a shower with the minor several months ago, but that they had only washed each other's hair.[57]

On April 11, 2011, a search warrant was signed and executed at the Hudson residence by another New Castle County detective for the vibrator and a receipt showing when the vibrator was purchased.[58] The minor had informed the detective that the vibrator was hidden in a drawer in the basement of the house.[59] The detective

---

[51] *Id.*
[52] *Id.*
[53] *Id.*
[54] *Id.*
[55] *Id.*
[56] *Id.*
[57] D.I. 1, Adult Complaint and Warrant, Ex. B.
[58] Affidavit of Probable Cause.
[59] *Id.*

located the vibrator inside a wooden dresser in the basement of the home and found several other sex toys inside the dresser.[60] The detective also located a large Sybian Saddle masturbation device behind a couch in the basement and found its various attachments in the dresser.[61] In addition, the detective found numerous DVDs with handwritten labels in another drawer and on the floor next to the dresser.[62] A video camera was also observed lying on the floor in the basement next to the television.[63]

The detective was advised by another occupant of the house that Hudson kept all of his receipts in a computer room upstairs.[64] Upon searching this room, the detective found several magazines depicting naked young adult women, several more DVDs with handwritten labels, and two computers that Hudson refused to let anyone else use.[65]

In a second interview with the minor, detectives learned additional details about the sexual abuse she incurred at the hands of Hudson. While New Castle County police officers continued to hold the Hudson residence from the first search warrant, the investigating detective applied for a second search warrant based on information gathered from the minor during the second interview and from the

---

[60] *Id.*
[61] *Id.*
[62] *Id.*
[63] *Id.*
[64] Affidavit of Probable Cause.
[65] *Id.*

execution of the first search warrant.[66]  On April 12, 2011, a second search warrant was signed and authorized by the Justice of the Peace Court.  The second search warrant was executed at the Hudson residence and additional evidence was seized including, among other things, various sex toys, the Sybian Saddle device, bedding from a wooden couch in the basement, DVDs, a video camera, and a laptop computer.

At trial, the minor testified to countless other incidents of unspeakable sexual abuse.[67]  The minor admitted that when she had spoken to the detectives in earlier interviews about things that occurred with Hudson, she did not tell them everything because she was afraid.[68]

## SECOND MOTION FOR POSTCONVICTION RELIEF

In his Second Motion, Hudson sets forth a singular claim of ineffective assistance of counsel.[69]  He argues that his trial counsel was ineffective "for failing to raise a Motion to Suppress because a warrant in the case was a general warrant and violated the tenets of the Fourth Amendment as it pertains to the particularity requirement."[70]  Prior to considering the merits of the Second Motion, the Court

---

[66] *Id.*
[67] Trial Transcript, February 3, 2012 at pgs.14-45.
[68] Trial Transcript, February 3, 2012 at pgs. 40-41.
[69] D.I. 108.
[70] *Id.*

9

must first determine whether Hudson's claim overcomes the threshold pleading requirements set forth in Superior Court Criminal Rule 61 ("Rule 61").[71]

**Rule 61 Procedural Bars to Relief**

Rule 61(i) establishes four procedural bars to postconviction relief.[72] Rule 61(i)(1) prohibits the Court from considering a motion for postconviction relief unless it is filed within one year after the judgment of conviction is final."[73] Rule 61(i)(2) bars second or subsequent motions for postconviction relief unless certain conditions are met.[74] Pursuant to Rule 61(i)(3) and (4), any ground for relief that was not previously raised is deemed waived,[75] and any claims that were formerly adjudicated, whether in the proceedings leading to the judgment of conviction, in an appeal, in a postconviction proceeding, or in a federal habeas corpus proceeding, are thereafter barred.[76]

The foregoing bars to relief do not apply to a claim that the court lacked jurisdiction or to a claim that satisfies the pleading requirements of Rule 61(d)(2).[77] Rule 61(d)(2)(i)-(ii) provides as follows:

---

[71] *Taylor v. State*, 32 A.3d 374, 388 (Del. 2011) (quoting *Shelton v. State*, 744 A.2d 465, 474 (Del. 1999)).
[72] Super. Ct. Crim. R. 61(i)(1)-(4).
[73] Super. Ct. Crim. R. 61(i)(1).
[74] Super. Ct. Crim. R. 61(i)(2).
[75] Super. Ct. Crim. R. 61(i)(3). Such a ground for relief will not be waived if the movant shows cause for relief from the procedural default and prejudice from violation of the movant's rights.
[76] Super. Ct. Crim. R. 61(i)(4).
[77] Super. Ct. Crim. R. 61(i)(5).

(2) Second or subsequent postconviction motions. A second or subsequent motion under this rule shall be summarily dismissed, unless the movant was convicted after a trial and the motion either:

(i)     pleads with particularity that new evidence exists that creates a strong inference that the movant is actually innocent in fact of the acts underlying the charges of which he was convicted; or

(ii)     pleads with particularity a claim that a new rule of constitutional law, made retroactive to cases on collateral review by the United States Supreme Court or the Delaware Supreme Court, applies to the movant's case and renders the conviction or death sentence invalid.[78]

This is Hudson's second motion for postconviction relief and it is procedurally barred on multiple grounds. Hudson's conviction became final for purposes of Rule 61 on March 24, 2014.[79] Thus, Hudson's Second Motion, having been filed on January 10, 2025, is untimely.[80]

The Second Motion is also procedurally barred pursuant to Rule 61(i)(4). In his First Motion, Hudson advanced numerous claims of ineffective assistance of counsel, which were denied by the Superior Court.[81] On appeal of that denial, Hudson argued that his conviction should be set aside for a number of reasons,

---

[78] Super. Ct. Crim. R. 61(d)(2).
[79] D.I. 42.
[80] D.I. 108. See Super. Ct. Crim. R. 61(i)(1).
[81] D.I. 44, 69.

including, that his "trial and appellate counsel provided ineffective assistance because they failed to seek to suppress two videos that were obtained by execution of an allegedly defective search warrant."[82]  Hudson argued that his trial counsel should have sought to suppress the video evidence because, *inter alia*, (i) there was no probable cause to seize the electronic equipment or search their contents and (ii) the warrant lacked sufficient particularity because it provided for an overly broad search of the contents and did not limit the search to a specific time period.[83]  In analyzing the particularity claim, the Delaware Supreme Court found that, in the circumstances of Hudson's case, "the search warrant was not impermissibly broad, and counsel therefore was not ineffective for failing to challenge the warrant."[84]

The claim of ineffective assistance of counsel Hudson raises in the Second Motion – that counsel was ineffective for failing to file a motion to suppress because the search warrant was a general warrant and lacked particularity – was previously raised in his First Motion and adjudicated by the Court.  As such, Rule 61(i)(4) precludes the claim from being raised again here.[85]

In light of the foregoing bars, Rule 61 requires that the Second Motion must be dismissed unless Hudson is able to establish that either  (i) new evidence exists

---

[82] *Hudson v. State*, 2020 WL 362784, at *1 (Del. Supr. Ct. Jan. 22, 2020).
[83] *Hudson v. State*, 2020 WL 362784, at *4 (Del. Supr. Ct. Jan. 22, 2020).
[84] *Id.*
[85] Moreover, Rule 61(i)(3) required Hudson to set forth all grounds for relief available to him in his First Motion.  Any ground not raised is considered waived.

that creates a strong presumption of his actual innocence of the underlying crimes or (ii) a new rule of Constitutional law made retroactive to cases on collateral review applies to his case.[86] Given that Hudson has not plead with particularity that any new evidence exists of his actual innocence, the only basis upon which his Second Motion may proceed is if he demonstrates that a new rule of Constitutional law has been established that applies to his case retroactively.[87] Defendant has not succeeded in that endeavor.

**Defendant's Argument**

Defendant attempts to bypass the procedural bars set forth in Rule 61 by arguing that an evolving line of cases regarding the search and seizure of electronic devices decided by the Delaware Supreme Court between 2016 and 2024 have created a new rule of constitutional law rendering his conviction invalid.[88] The string of cases cited by Defendant – *Wheeler*,[89] *Buckham*,[90] *Taylor*,[91] *Terreros*,[92] and *Matthews*[93] – address the scope of search warrants for digital data stored on electronic devices, such as personal computers and smartphones, and discuss the heightened particularity requirement necessary to avoid an unconstitutional general

---

[86] Super. Ct. Crim. R. 61(d)(2) & (5); and Rule 61(i).
[87] *State v. Weber*, 2019 WL 3430487, *3 (Del. Super. Ct. July 29, 2019).
[88] D.I. 109, Memorandum of Law in Support of Rule 61 Motion for Postconviction Relief.
[89] *Wheeler v. State*, 135 A.3d 282 (Del. 2016).
[90] *Buckham v. State*, 185 A.3d 1 (Del. 2018).
[91] *Taylor v. State*, 260 A.3d 602 (Del. 2021).
[92] *Terreros v. State*, 312 A.3d 651 (Del. 2024).
[93] *Matthews v. State*, 319 A.3d 891 (Del. 2024).

warrant.[94]  Taken together, these cases generally hold that a warrant that authorizes the search of an electronic device of its entire contents for evidence of a broad crime that contains no temporal limitation, especially when one is available and discussed in the affidavit of probable cause, is a general warrant and lacks particularity and, therefore, violates a defendant's constitutional rights.

In his Memorandum of Law in support of the Second Motion, Hudson contends that at the time the search warrants were executed in his case in 2011, there was little guidance from the Delaware Supreme Court regarding search warrants for electronic data.[95]  He further observes that, in recent years, the Delaware Supreme Court has provided guidance to the lower courts and the police as to what constitutes a general warrant or one that lacks particularity in the digital setting.[96]  But, according to Hudson, despite that guidance regarding improper general warrants and the similarities to the search warrants in his case, the Delaware courts have refused to apply those same standards to his case.[97]  Hudson further argues that

> [i]n attempting to ascertain the reasoning for the courts
> failing to accept the similarities, the main difference noted
> is that none of these cases featured an instance where the
> ground was that trial counsel was ineffective for failing to

---

[94] *Wheeler*, 135 A.3d 282 (Del. 2016); *Buckham*, 185 A.3d 1 (Del. 2018); *Taylor*, 260 A.3d 602 (Del. 2021); *Terreros*, 312 A.3d 651 (Del. 2024); *Matthews*, 319 A.3d 891 (Del. 2024).  Although not cited by Hudson, the Court notes that the Delaware Supreme Court decisions in *Thomas v. State*, 305 A.3d 683 (Del. 2023), and *Coffield v. State*, 2025 WL 85345 (Del. Super. Ct. Jan. 14, 2025), further distinguish these holdings.

[95] D.I. 109.

[96] *Id.*

[97] *Id.*

14

> file a Motion to Suppress because of a similar defective warrant. That is until *Matthews*. *Matthews* is the first case that creates a new rule in Delaware that when trial counsel fails to object and file a Motion to Suppress, the case must be reversed and remanded as the warrant was illegal.[98]

Hudson is correct that the Delaware Supreme Court's decision in *Matthews* was rendered in the context of an appeal of a denial of a postconviction motion for relief, whereas the other cases cited were decided in the context of a direct appeal of defendants' convictions. However, that is a distinction without a difference here. The Delaware Supreme Court's holding in *Matthews* is limited to its facts and does not create a new rule of law requiring *all* postconviction cases to be reversed and remanded when trial counsel fails to file a motion to suppress, as Hudson suggests. Put another way, *Matthews* does not announce a new, retroactively applicable rule of constitutional law applicable to Hudson's case.

Based on the United States Supreme Court's holding in *Teague v. Lane*,[99] the Delaware Supreme Court "adopt[ed] a general rule of non-retroactivity for cases on collateral review[, namely that] a postconviction relief court need apply only the constitutional standards that prevailed at the time the original proceedings took

---

[98] *Id.* In *Matthews*, appellant argued in his motion for postconviction relief that his trial counsel was ineffective for failing to move to suppress the evidence obtained from his cell phone. *Matthews*, 319 A.3d at 902. On appeal, the Delaware Supreme Court reversed, remanded and vacated his convictions, holding that that his trial counsel's failure to suppress the cellphone evidence was deficient and that Matthews was prejudiced under *Strickland*. *Id.* at 906, 908; *Strickland v. Washington*, 466 U.S. 668 (1984).
[99] 489 U.S. 288 (1989).

place."[100] Thus, new constitutional rules will not be applicable to cases which have become final before the new rules are announced, unless the rules fall within one of two exceptions.[101] Since Hudson's conviction became final in 2014, the holdings set forth in *Wheeler*, *Buckham*, *Taylor*, *Terreros* and *Matthews* are not applicable to his case unless made retroactive by the Delaware Supreme Court because the new rule falls into one of two exceptions. The first exception requires "a new rule [to be] applied retroactively if it places 'certain kinds of primary, private individual conduct beyond the power of the criminal lawmaking authority to proscribe.'"[102] Under the second exception, "a rule may apply retroactively if it 'requires the observance of those procedures that are implicit in the concept of ordered liberty.'"[103]

This Court, however, need not engage in such an analysis in this case because the issue of retroactivity of the line of search warrant cases cited by Hudson was squarely addressed in *Grayson v. State*.[104] In *Grayson*, the Delaware Supreme Court affirmed a summary dismissal of appellant's second motion for postconviction relief holding that "[c]ontrary to appellant's claim, our ruling in *Taylor v. State* did not announce a new, retroactively applicable rule of constitutional law."[105] The holding

---

[100] *Flamer v. State*, 585 A.2d 736, 749 (Del. 1990). ("The application of a constitutional rule not in existence at the time a conviction became final seriously undermines the principle of finality which is essential to the operation of our criminal justice system.") *Id.*
[101] *Id.*
[102] *Richardson v. State*, 3 A.3d 233, 238 (Del. 2010) (quoting *Teague*, 489 U.S. at 311).
[103] *Id.* (quoting *Teague*, 489 U.S. at 313).
[104] *Grayson v. State*, 287 A.3d 226 (Del. 2022) (TABLE).
[105] *Id.* (citations omitted).

in *Grayson* must likewise apply to Hudson's claim because the holding in *Matthews* is consistent with *Taylor*.[106] Both *Matthews* and *Taylor* recognize the need to suppress evidence obtained from a defendants' cell phones because the warrants in both cases were unconstitutional general warrants. *Matthews* simply applies that law in the context of a motion for postconviction relief, finding trial counsel's failure to move to suppress that evidence constituted deficient performance and prejudiced the defendant under *Strickland*.[107] Therefore, *Matthews*, like *Taylor*, does not announce a new, retroactively applicable rule of constitutional law. As such, Hudson has failed to overcome the threshold pleading requirement set forth in Rule 61 prohibiting the filing of subsequent postconviction motions. Therefore, his Second Motion must be summarily dismissed.

---

[106] *See State v. Turner*, 2024 WL 4503985, at *3 (Del. Super. Oct. 14, 2024), *aff'd Turner v. State*, 2025 WL 655084 (Del. February 27, 2025).
[107] *Strickland v. Washington*, 466 U.S. 668 (1984).

## CONCLUSION

For all of the foregoing reasons, Hudson's Second Motion for Postconviction Relief should be **SUMMARILY DISMISSED.**

    **IT IS SO RECOMMENDED.**


        */s/ Janine M. Salomone*
        The Honorable Janine M. Salomone


oc:    Prothonotary
cc:    Annemarie Hayes, Esquire, Deputy Attorney General
        William Hudson, *pro se*